OWEN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the judgment with regard to Ray Anthony Lopez, but I respectfully dissent from the disposition of Richard Ramos’s appeal. Because the evidence is insufficient to support his conviction, I would reverse.
Ramos was accused of conspiring with others, including Rogelio Tapia, to distribute and to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine. This conspiracy was Tapia’s drug trafficking operation, which primarily concerned the trafficking of drugs from California into Texas, not the various drug trafficking activities by individual members of the Gardena 13 gang. The Gardena 13 gang had approximately 5,000 members, many of whom sold illegal drugs. Proof that Ramos collected taxes imposed by the Mexican Mafia in order to protect drug trafficking operations by members of the Gardena 13 gang is not evidence that Ramos was protecting Ta-pia’s drug operation.
In order to convict Ramos, the Government was required to offer evidence of “(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant’s knowledge of the agreement, and (3) the defendant’s voluntary participation in the conspiracy.”[1] The majority opinion does not cite any evidence that Ramos knew of the Tapia drug conspiracy or that Ramos voluntarily participated in that conspiracy. The record is likewise devoid of such evidence. The majority opinion sets forth the facts offered against Ramos in two paragraphs and a single sentence in a third that is repetitive:
*310 Testimony adduced at trial also indicates that Ramos was heavily involved in tax collection. Co-defendant Glenn Kapuy, who was not a member of Gardena 13 but who nevertheless sold drugs, including methamphetamine, alongside Olmos testified that Ramos repeatedly exacted taxes from him, in the form of cash or drugs.
One recorded phone call with Ramos suggests that he played an important role early on in negotiating with the Mexican Mafia for a lower tax assessment. There was no evidence presented suggesting that Tapia and Ramos had any direct contact during the conspiracy.[2]
* * *
Similarly, the evidence at trial indicates that Ramos purchased, or was given, some of Tapia’s methamphetamine through Kapuy as part of his tax collection efforts on more than one occasion. As Kapuy purchased his drugs from Ol-mos, who bought them from Tapia, the jury could reasonably conclude that Ramos was on notice of the drug distribution conspiracy, regardless of whether or not he knew from where the drugs originated. This evidence is sufficient to demonstrate Ramos’s knowledge of the narcotics distribution conspiracy.[3]
A recorded phone call indicated that Ramos had a relationship with the Mexican Mafia associates and participated in negotiating a lower amount of taxes.[4]
As to the first paragraph, the majority opinion accurately recounts that there is no evidence that Ramos ever met or had contact with Tapia. The fact that Ramos collected taxes in the form of cash or drugs to be paid to the Mexican Mafia does not connect Ramos to the Tapia conspiracy, particularly in light of the fact that there was evidence that Ramos may have been the Mexican Mafia’s local representative in Gardena as well as a member of the Gardena 13 gang. Similarly, the fact that Ramos negotiated a lower rate of taxes with the Mexican Mafia does not connect Ramos to the Tapia conspiracy.
The second paragraph sets forth a highly attenuated chain between Ramos and the drugs that Tapia trafficked. The majority opinion correctly observes that Ka-puy sold or gave drugs to Ramos as part of Ramos’s tax collection efforts for the Mexican Mafia. Although there was evidence that Kapuy purchased some drugs from Olmos and Tapia supplied some drugs to Olmos, there was no evidence that the source of the drugs that Ramos received was Tapia and not other possible sources. Nor is there any evidence that Kapuy told Ramos the sources of his drugs. Nevertheless, from this scant evidence, the majority opinion concludes that the jury was permitted to find that “Ramos was on notice of the drug distribution conspiracy, regardless of whether or not he knew from where the drugs originated.” [5]
The crux of the panel majority’s reasoning seems to be that if Ramos collected taxes assessed by the Mexican Mafia on illegal activities, then Ramos can be found to have known of and to have agreed to participate in each of the illegal activities that was being taxed. I cannot agree that the law of conspiracy can be stretched this far. Ramos’s knowledge of drug trafficking by Kapuy and “taxing” that illegal activity does not equate to either knowl *311 edge of or participation in Tapia’s drug trafficking conspiracy.
The majority attempts to deflect this criticism by asserting it does “not find the evidence to be attenuated to that degree.” [6] In support of this point, it cites our precedent in United States v. Richerson,[7] which held that “[pjarties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy.”[8] If the record reflected that (1) Ramos knew of the common goal of the Tapia conspiracy, (2) Ka-puy was a core conspirator in the Tapia conspiracy, and (3) Ramos knowingly furthered the Tapia conspiracy’s common goal, then I agree that Richerson would control this case. The record, however, does not contain such evidence. The record reflects only that Ramos knew that Kapuy was trafficking — but that is all it reflects. Ramos’s mere knowledge of Ka-purs retail methamphetamine sales is not evidence of Ramos’s further knowledge that Kapuy had agreed with others in the Tapia conspiracy or of Ramos’s agreement to participate in the Tapia conspiracy.
The issue is best stated as whether assessing a “tax” on illegal activities — that is, obtaining money by extortion — amounts to participation in a conspiracy to commit the illegal activity that is “taxed.” I submit that the Government proved extortion, but Ramos was not charged with extortion. He was charged with agreeing “to possess with intent to distribute and to distribute a controlled substance” in excess of 500 grams.
There is no question that Ramos engaged in illegal activity. But the Government did not prove that Ramos knew of Tapia’s drug trafficking conspiracy or that Ramos agreed to participate in that conspiracy. Accordingly, I dissent.

. United States v. Booker, 334 F.3d 406, 409 (5th Cir.2003) (citing United States v. Gallardo-Trapero, 185 F.3d 307, 316-17 (5th Cir.1999)).

. Ante at 303-04.

. Ante at 306.

. Ante at 306-07.

. Ante at 306.

. Ante at 306 n. 7.

. Ante at 306 n. 7.

. United States v. Richerson, 833 F.2d 1147, 1154 (5th Cir.1987) (emphasis added) (citing United States v. Perez, 489 F.2d 51, 62 (5th Cir.1973)).